# EX. 1

9/6/13 Oklahoma: OK Regulation 1.4.4 Major Sources -- Prevention of Significant Deterioration (PSD) Requirements for Attainment Areas, SIP effective 2000-01-07,

Case 5:13-cv-00690-D Document 10-3 Filed 09/06/13 Page 2 of 13


Close



# Oklahoma

| Main Heading: | Oklahoma SIP Regulations; SIP effective 2000-01-03 |
|---|---|
| Subheading: | Regulation 1.4 Air Resources Management Permits Required |
| Item Subpart: | OK Regulation 1.4.4 Major Sources -- Prevention of Significant Deterioration (PSD) Requirements for Attainment Areas, SIP effective 2000-01-07 |

### Citations & Dates

| State SIP Citation#: | |
|---|---|
| State Effective Date: | |
| Federal SIP Citation#: | |
| Federal Effective Date: | |
| Federal Register Citation#: | |
| Federal Register Publication Date: | |
| Codification #: | |
| CFR Citation#: | |

## Regulatory Text:

1.4.4   Major Sources -- Prevention of Significant Deterioration (PSD) Requirements for Attainment Areas

(Approved by EPA 08/25/1983 (48 FR 38636) at 52.1920(c)(26) effective 08/25/1983.
 Revisions approved by EPA
02/12/1991 (56 FR 05655) at 52.1920(c)(38) effective 04/15/1991;
07/23/1991 (56 FR 33717) at 52.1920(c)(41) effective 09/23/1991;
11/08/1999 (64 FR 60683) at 52.1920(c)(49) effective 01/07/2000.)

Outline:
1.4.4   (a)   Applicability
1.4.4   (b)   Definitions: Restricted Section 1.4.4
1.4.4   (c)   Source Applicability Determination
1.4.4   (d)   Review, Applicability, and Exemptions
1.4.4   (e)   Control Technology
1.4.4   (f)   Air quality impact evaluation

9/6/13       Oklahoma: OK Regulation 1.4.4 Major Source Prevention of Significant Deterioration (PSD) for Attainment Areas, SIP effective 2000-01-07,

Case 5:13-cv-00690-D   Document 10-3   Filed 09/06/13   Page 3 of 13

1.4.4   (g)   Source Impacting Class I areas
1.4.4   (h)   Innovative Control Technology


**1.4.4   (a)   Applicability**
        (1)   The new source requirements of this section, in addition to the requirements of Section 1.4.2, shall apply to all major stationary sources and major modifications as specified in subsections (b), (c) and (d) following and are effective upon adoption of this regulation by Oklahoma.  Except that the 1.4.4 requirements will not be necessary for sources required to meet the permit requirements of the United States Environmental Protection Agency under Title 40 Part 52.21 of the Code of Federal Regulations.


**1.4.4   (b)   Definitions: Restricted Section 1.4.4**
   ( 1)   <u>Major Stationary Source</u> -
     (A)   Any of the following sources of air pollutants which emits, or has the potential to emit, 100 tons per year or more of any pollutant subject to regulation:
     Fossil-fuel boilers (or combustion thereof) totaling more than 250 million BTU per hour heat input,
     Coal cleaning plants (with thermal dryers),
     Kraft pulp mills,
     Portland cement plants,
     Primary zinc smelters,
     Iron and steel mill plants,
     Primary aluminum ore reduction plants,
     Primary copper smelters,
     Municipal incinerators capable of charging more than 250 tons of refuse per day,
     Hydrofluoric, sulfuric or nitric acid plants
     Petroleum refineries,
     Lime plants,
     Phosphate rock processing plant,
     Coke oven batteries,
     Sulfur recovery plants, or
     Carbon black plants (furnace process),
     Primary lead smelters,
     Fuel conversion plants,
     Sintering plants,
     Secondary metal production plants,
     Chemical process plants,
     Fossil fuel-fired steam electric plants of more than 250 million BTU per hour heat input
     Petroleum storage and transfer units with a total storage capacity exceeding 300,000 barrels,
     Taconite ore processing plants.
     Glass fiber processing plants,
     Charcoal production plants,
     (B)   Any other source not on the list above which emits, or has the potential to emit, 250 tons per year or more of any pollutant subject to regulation.
     (C)   Any physical change that would occur at a source not otherwise qualify as a major source under (A) and (B) above if the change would constitute a major source by itself.
     (D)   A major source that is major for volatile organic compounds shall be considered major for ozone.
   ( 2)   <u>Major Modification</u>
     (A)   Any physical change in or change in the method of operation of a major source that would result in a significant net emissions increase of any pollutant

subject to regulation.
        (B)  Any net emissions increase that is significant for volatile organic compounds shall be considered significant for ozone.
        (C)  A physical change or change in the method of operation shall not include:
            (i)  Routine maintenance, repair and replacement.
            (ii)  Use of an alternate fuel or raw material by reason of any order under sections 2(a) and (b) of the Energy Supply and Environmental Coordination Act of 1974 (or any superseding legislation) or by reason of a natural gas curtailment plan pursuant to the Federal Power Act.
            (iii) Use of an alternate fuel by reason of an order or rule under section 125 of the Federal Clean Air Act.
            (iv)  Use of an alternate fuel at a steam generating unit to the extent that the fuel is generated from municipal solid waste.
            (v)  Use of an alternate fuel or raw material by a source which:
                (a)  The source was capable of accommodating before January 6, 1975, unless such change would be prohibited under any enforceable permit limitation which was established after January 6, 1975; or,
                (b) The source is approved to use under any permit issued under 40 CFR 52.21 or this Regulation No. 1.4.
            (vi)  An increase in the hours of operation or in the production rate, unless such change would be prohibited under any enforceable permit limitation which was established after January 6, 1975.
            (vii)  Any change in source ownership.
    ( 3)  <u>Net Emissions Increase</u> -
        (A)  The amount by which the sum of the following exceeds zero:
            (i)  Any increase in actual emissions from a particular physical change or change in the method of operation at a source; and,
            (ii)  Any other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable.
        (B)  An increase or decrease in actual emissions is contemporaneous with the increase from the particular change only if it occurs within 3 years before the date that the increase from the particular change occurs.
        (C)  An increase or decrease in actual emissions is creditable only if the Commissioner has not relied on it in issuing a permit under 1.4.2, which permit is in effect when the increase in actual emissions from the particular change occurs.
        (D)  An increase or decrease in actual emissions of sulfur dioxide or particulate matter or nitrogen oxides which occurs before the applicable minor source baseline date is creditable only if it is required to be considered in calculating the amount of maximum allowable increases remaining available.  (Amended effective 06-04-90)
        (E)  An increase in actual emissions is creditable only to the extent that the new level of actual emissions exceeds the old level.
        (F)  A decrease in actual emissions is creditable only to the extent that:
            (i)  The old level of actual emissions or the old level of allowable emissions, whichever is lower, exceeds the new level of actual emissions;
            (ii)  It is enforceable at and after the time that actual construction on the particular change begins;
            (iii) It has approximately the same qualitative significance for public health and welfare as that attributed to the increase from the particular change.
        (G)  An increase that results from a physical change at a source occurs when the emission unit on which construction occurred becomes operational and begins to emit a particular pollutant.  Any replacement unit that requires shakedown becomes operational only after a reasonable shakedown period, not to exceed 180 days.
    ( 4)  <u>Potential to Emit</u> - the maximum capacity of a source to emit a pollutant under its physical and operational design.  Any physical or operational limitation on the capacity of the source to emit a pollutant, including air pollution control equipment and restrictions on hours of operation or on the type or amount of

9/6/13    Oklahoma: OK Regulation 1.4.3, Major Sources/Prevention of Significant Deterioration (PSD)/Amendments Pertaining to Attainment Areas, SIP effective 2000-01-07,

Case 5:13-cv-00690-D   Document 10-3   Filed 09/06/13   Page 5 of 13

material combusted, stored or processed, shall be treated as part of its design if the limitation or the effect it would have on emissions is enforceable.  Secondary emissions do not count in determining the potential to emit of a source.
   ( 5)   Stationary Source - any building, structure, facility or installation which emits or may emit any air pollutant subject to regulation.
   ( 6)   Building, Structure, Facility or Installation - all of the pollutant-emitting activities which belong to the same industrial grouping, are located on one or more contiguous or adjacent properties, and are under the control of the same person or persons under common control.  Pollutant-emitting activities shall be considered as part of the same industrial grouping if they belong to the same "Major Group" (i.e., which have the same two-digit code) as described in the Standard Industrial Classification Manual, 1972, as amended by the 1977 Supplement.
   ( 7)   Emissions Unit - any part of a source which emits or would have the potential to emit any pollutant subject to regulation.
   ( 8)   Construction - any physical change or change in the method of operation (including fabrication, erection, installation, demolition, or modification of an emissions unit) which would result in a change in actual emissions.
   ( 9)   Commence - as applied to construction of a major source or major modification means that the owner or operator has all necessary preconstruction approvals or permits and either has:
      (A)   Begun, or caused to begin, a continuous program of actual on-site construction of the source, to be completed within a reasonable time; or,
      (B)   Entered into binding agreements or contractual obligations, which cannot be cancelled or modified without substantial loss to the owner or operator, to undertake a program of actual construction of the source to be completed within a reasonable time.
   (10)   Necessary Preconstruction Approvals or Permits - those permits or approvals required under all applicable air quality control laws and regulations.
   (11)   Begin Actual Construction - means, in general, initiation of physical on-site construction activities on an emissions unit which are of a permanent nature.  Such activities include, but are not limited to, installation of building supports and foundations, laying of underground pipework, and construction of permanent storage structures.  With respect to a change in method of operation this term refers to those on-site activities, other than preparatory activities, which mark the initiation of the change.
   (12)   Best Available Control Technology - the control technology to be applied for a major source or modification is the best that is available as determined by the Commissioner on a case basis taking into account energy, environmental, costs and economic impacts of alternate control systems.
   (13)   Baseline Concentration means:
      (A) That ambient concentration level which exists in the baseline area at the time of the applicable minor source baseline date. A baseline concentration is determined for each pollutant for which a minor source baseline date is established and shall include:
         (i)   The actual emissions representative of sources in existence on the applicable minor source baseline date, except as provided in (B) below.
         (ii)   The allowable emissions of major sources which commenced construction before the baseline date but were not in operation by the applicable minor source baseline date.  (Amended effective 06-04-90)
      (B)   The following will not be included in the baseline concentration and will affect the applicable maximum allowable increase(s):
         (i)   Actual emissions from any major source on which construction commenced after the major source baseline date; and,
         (ii)   Actual emissions increases and decreases at any source occurring after the minor source baseline date.  (Amended effective 06-04-90)
   (14)   Baseline Date -
      (A)   Major source baseline date means

(i)  in the case of particulate matter and sulfur dioxide, January 6, 1975, and,

(ii)  in the case of nitrogen dioxide, February 8, 1988.  (Amended effective 06-04-90)

(B)  Minor source baseline date means the earliest date after the trigger date on which a major modification (subject to 40 CFR 52.21 or Oklahoma Regulation Number 1.4.4) submits a complete application.  The trigger date is:

(i)  in the case of particulate matter and sulfur dioxide, August 7, 1977, and

(ii)  in the case of nitrogen oxides, February 8, 1988.  (Amended effective 06-04-90)

(15)  <u>Baseline Area</u> - any areas designated as attainment or unclassifiable in which the major source or major modification establishing the minor source baseline date would construct or would have an air quality impact equal to or greater than 1 ug/m3 (annual average) of the pollutant for which the minor source baseline date is established.  (Amended effective 06-04-90)

(16)  <u>Allowable Emissions</u> - the emission rate of a stationary source calculated using the maximum rated capacity of the source (unless the source is subject to enforceable limits which restrict the operating rate, or hours of operation, or both) and the most stringent of the following:

(A)  The applicable standards as set forth in 40 CFR Parts 60 and 61;
(B)  The applicable state regulations allowable emissions; or,
(C)  The emissions rate specified as an enforceable permit condition.

(17)  <u>Secondary Emissions</u> - emissions which occur as a result of the construction or operation of a major stationary source or modification, but do not come from the source or modification itself.  For the purposes of 1.4.4 secondary emissions must be specific, well defined, quantifiable, and impact the same general areas as the source or modification which causes the secondary emissions.  Secondary emissions may include, but are not limited to:

(A)  Emissions from trains coming to or from the new or modified stationary source; and,
(B)  Emissions from any offsite support facility which would not otherwise be constructed or increase its emissions as a result of the construction or operation of the major source or modification.

(18)  <u>Innovative Control Technology</u> - any system of air pollution control that has not been adequately demonstrated in practice, but would have a substantial likelihood of achieving greater continuous emissions reduction than any control system in current practice or of achieving at least comparable reductions at lower cost in terms of energy, economics, or non-air quality environmental impacts.

(19)  <u>Fugitive Emissions</u> - those emissions which could not reasonably pass through a stack, chimney, vent or other functionally equivalent opening.

(20)  <u>Actual Emissions</u> - the actual rate of emissions of a pollutant from an emissions unit, as determined in accordance with the following:

(A)  In general, actual emissions as of a particular date shall equal the average rate in tons per year at which the unit actually emitted the pollutant during a two-year period which precedes the particular date and which is representative of normal source operation.  The reviewing authority may allow the use of a different time period upon a determination that it is more representative of normal source operation.  Actual emissions shall be calculated using the unit's actual operating hours, production rates, and types of materials processed, stored, or combusted during the selected time period.  Actual emissions may also be determined by source tests, or by best engineering judgment in the absence of acceptable test data.

(B)  The reviewing authority may presume that source-specific allowable emissions for the unit are equivalent to the actual emissions of the unit.

(C)  For any emissions unit which has not begun normal operations on the particular date, actual emissions shall equal the potential to emit of the unit on

9/6/13    Oklahoma: OK Regulation 1.4.1 Major Source PSD, Prevention of Significant Deterioration Requirements, Attachment A-1.3, SIP effective 2000-01-07,

Case 5:13-cv-00690-D   Document 10-3   Filed 09/06/13   Page 7 of 13

that date.

   (21) Complete - in reference to an application for a permit, that the application contains all the information necessary for processing the application.  Designating an application complete for purposes of permit processing does not preclude the reviewing authority from requesting or accepting any additional information.
   (22) Significant
     (A)  In reference to a net emissions increase or the potential of a source to emit any of the following pollutants, a rate of emissions that would equal or exceed any of the following rates:
   Carbon monoxide:    100 tons per year (tpy),
   Nitrogen oxides:    40 tpy,
   Sulfur dioxide:     40 tpy,
   Particulate matter: 25 tpy of particulate matter emissions or 15 tpy of PM-10 emissions,
   Ozone:              40 tpy of volatile organic compounds,
   Lead:               0.6 tpy,
   Asbestos:           0.007 tpy,
   Beryllium:          0.0004 tpy,
   Mercury:            0.1 tpy,
   Vinyl Chloride:     1 tpy,
   Fluorides:          3 tpy,
   Sulfuric acid mist: 7 tpy,
   Hydrogen sulfide (H2S): 10 tpy,
   Total reduced sulfur (including H2S): 10 tpy, and
   Reduced sulfur compounds (including H2S): 10 tpy.
   (B)  Notwithstanding the above, "significant" means any emissions rate or any net emissions increase associated with a major source or modification which would construct within 6 miles of a Class I area, and have an impact on such area equal to or greater than 1 ug/m3 (24-hour average).

**1.4.4  (c)  Source Applicability Determination**
       (1)  Proposed new sources and source modifications to which these requirements are applicable are determined by size, geographical location and type of emitted pollutants.
             (A)  Size
                  (i)  Permit review will apply to sources and modifications that emit any regulated pollutant in major amounts.  These quantities are specified in the definitions for major stationary source, major modification, potential to emit, net emissions increase, significant and other associated definitions.
                  (ii)  At such time that a particular source or modification becomes major solely by virtue of a relaxation in any enforceable permit limitation which was established after August 7, 1980 on the capacity of the source or modification otherwise to emit a pollutant, such as a restriction on hours of operation, then the requirements of 1.4.2 and 1.4.4 shall apply to that source or modification as though construction had not yet commenced on it.
             (B)  Location
                  (i)  Sources and modifications which are major in size and proposed for construction in an area which has been designated as attainment or unclassified for any applicable ambient air standard are subject to the prevention of significant deterioration requirements.
                  (ii)  Those sources and modifications locating in an attainment or unclassified area but impacting on a nonattainment area may also be subject to the requirements of section 1.4.5 (See 1.4.5(C)(3)).

**1.4.4  (d)  Review, Applicability, and Exemptions**

9/6/13     Oklahoma: OK Regulation 1.4.3 Major Source Prevention of Significant Deterioration (PSD) Requirements Attainment Areas, SIP effective 2000-01-07,

Case 5:13-cv-00690-D   Document 10-3   Filed 09/06/13   Page 8 of 13

(1)   PSD requirements to a particular source or modification do not apply if:

(A)   It is a nonprofit health or educational institution.

(B)   The source is major by virtue of fugitive emissions, to the extent quantifiable, included in calculating the potential to emit and is a source other than one of the following categories:

Coal cleaning plants (with thermal dryers),
Kraft pulp mills,
Portland cement plants,
Primary zinc smelters,
Iron and steel mills,
Primary aluminum ore reduction plants,
Primary copper smelters,
Municipal incinerators capable of charging more than 250 tons of refuse per day,
Hydrofluoric, sulfuric or nitric acid plants,
Petroleum refineries,
Lime plants,
Phosphate rock processing plants,
Coke oven batteries,
Sulfur recovery plants,
Carbon black plants (furnace process),
Primary lead smelters,
Fuel conversion plants,
Sintering plants,
Secondary metal production plants,
Chemical process plants,
Fossil-fuel boilers (or combustion thereof) totaling more than 250 million BTU per hour heat input,
Petroleum storage and transfer units with a total storage exceeding 300,000 barrels,
Taconite ore processing plants,
Glass fiber processing plants,
Charcoal production plants,
Fossil fuel-fired steam electric plant of more than 250 million BTU per hour heat input,
Any other stationary source category which, as of August 7, 1980, is being regulated by federal New Source Performance Standards (NSPS) or National Emission Standards for Hazardous Air Pollutants (NESHAPS).

(C)   A portable stationary source which has previously received a permit under the PSD requirements and proposes to relocate to a temporary new location from which its emissions would not impact a Class I area or an area where an applicable increment is known to be violated.

(2)   The requirements of 1.4.4(f) are not applicable if the emissions, with respect to a particular pollutant, would be temporary and impact no Class I area and no area where an applicable increment is known to be violated.

(3)   The requirements of 1.4.4(f) are not applicable to the emissions, with respect to a particular pollutant, to a modification of a major source that was in existence on March 1, 1978 if the net increase in allowable emissions of each regulated pollutant, after the application of best available control technology, would be less than 50 tons per year.

(4)   The monitoring requirements of 1.4.4(f) are not applicable for a particular pollutant if the emission increase of the pollutant from a new source or the net emissions increase of the pollutant from a modification would cause, in any area, air quality impacts less than the following listed amounts, or are pollutant concentrations that are not on the list.

Carbon monoxide - 575 ug/m3, 8-hour average
Nitrogen dioxide - 14 ug/m3, annual average

```
      Particulate matter - 10 ug/m3, TSP, 24-hour average, or 10 ug/m3 PM-10, 24-hour
average
      Sulfur dioxide - 13 ug/m3, 24-hour average
      Ozone*
      Lead - 0.1 ug/m3, 3-month average
      Mercury - 0.25 ug/m3, 24-hour average
      Beryllium - 0.001 ug/m3, 24-hour average
      Fluorides - 0.25 ug/m3, 24-hour average
      Vinyl chloride - 15 ug/m3, 24-hour average
      Total reduced sulfur - 10 ug/m3, 1-hour average
      Hydrogen sulfide - 0.2 ug/m3, 1-hour average
      Reduced sulfur compounds - 10 ug/m3, 1-hour average
```
* No de minimis air quality level is provided for ozone.  However, any net increase of 100 tons per year or more of volatile organic compounds subject to PSD would be required to perform an ambient impact analysis, including the gathering of ambient air quality data.

          (5)   If a complete permit application for a source or modification was submitted before August 7, 1980 the requirements for best available control technology in 1.4.4(e) and for monitoring in 1.4.4(f)(1) - (6) are not applicable.  Instead, the federal requirements at 40 CFR 52.21 (j) and (n) as in effect on June 19, 1978 are applicable to any such source or modification.

          (6)   The requirements for air quality monitoring in 1.4.4(f)(2) - (4) shall not apply to a particular source or modification that was subject to federal 40 CFR 52.21 as in effect on June 19, 1978 if a permit application in accordance with Regulation 1.4 is submitted before June 8, 1981 and the Commissioner subsequently determines that the application as submitted was complete with respect to the requirements of Regulation 1.4 other than those in 1.4.4(f)(2) - (4) and with respect to the requirements for such analyses at 40 CFR 52.21(m)(2) as in effect on June 19, 1978.  Instead, the latter requirements shall apply to any such source or modification.

          (7)   The requirements for air quality monitoring in 1.4.4(f)(2) - (4) shall not apply to a particular source or modification that was not subject to 40 CFR 52.21 as in effect on June 19, 1978 if a permit application in accordance with Regulation 1.4 is submitted before June 8, 1981 and the Commissioner subsequently determines that the application as submitted was complete, except with respect to the requirements in 1.4.4(f)(2) - (4).

          (8)   As specified in the applicable definitions of 1.4.4(b), the requirements of 1.4.4 for PSD and 1.4.5 for nonattainment areas are not applicable to a modification if the existing source was not major on August 7, 1980 unless the proposed addition to that existing minor source is major in its own right.

          (9)   The Commissioner shall determine if the requirements for air quality monitoring of PM-10 in 1.4.4(f)(1) through (4) may be waived for a particular source or modification when the owner or operator of the source or modification submits an application for a permit on or before June 1, 1988 and the Commissioner subsequently determines that the application, except with respect to the requirements for monitoring particulate matter under 1.4.4(f)(1) through (4), was complete before that date.

          (10)  The requirements for air quality monitoring of PM-10 in 1.4.4(f)(2) through (4) and 1.4.4(f)(8) shall apply to a particular source or modification if the owner or operator of the source or modification submits an application for a permit after June 1, 1988 and no later than December 1, 1988.  The data shall have been gathered over at least the period from February 1, 1988 to the date the application becomes otherwise complete in accordance with the provisions of 1.4.4(d)(12), except that if the Commissioner determines that a complete and adequate analysis can be accomplished with monitoring data over a shorter period (not to be less than 4 months), the data required by 1.4.4(f)(2) and (3) shall have been gathered over that shorter period.

9/6/13        Oklahoma: OK Regulation 1.4.4 Major Source of Significant Deterioration (PSD/Nonattainment Area) SIP effective 2000-01-07,

Case 5:13-cv-00690-F   Document 10-3   Filed 09/06/13   Page 10 of 13

    (11) For any application that becomes complete, except as to the requirements of 1.4.4(f)(2), (3) and (4) pertaining to monitoring of PM-10, after December 1, 1988 and no later than August 1, 1989, the data that 1.4.4(f)(2) and (3) require shall have been gathered over at least the period from August 1, 1988 to the date the application becomes otherwise complete, except that if the Commissioner determines that a complete and adequate analysis can be accomplished with monitoring data over a shorter period (not to be less than 4 months), the data that 1.4.4(f)(2) and (3) require shall have been gathered over that shorter period.
      (A) With respect to any requirements for air quality monitoring of PM-10 under 1.4.4(d)(9) and (10), the owner or operator of the source or modification shall use a monitoring method approved by the Commissioner and shall estimate the ambient concentrations of PM-10 using the data collected by such approved monitoring method in accordance with estimating procedures approved by the Commissioner.  (Amended effective 6-11-89)
      (B) The requirements of 1.4.4(f) and (g) do not apply to a source or modification with respect to any maximum allowable increase for nitrogen oxides if the owner or operator of the source or modification submitted a completed application for a permit before February 8, 1988.  (Amended effective 06-04-90)
    (13) Excluded from increment consumption are the following cases:
      (A) Concentrations from an increase in emissions from any source converting from the use of petroleum products, natural gas, or both by reason of any order under sections 2(a) and (b) of the Energy Supply and Environmental Coordination Act of 1974 (or any superseding legislation), or by reason of a natural gas curtailment plan pursuant to the Federal Power Act.  Such exclusion is limited to five years after the effective date of the order or plan.
      (B) Emissions of particulate matter from construction or other temporary emission-related activities of new or modified sources.
      (C) A temporary increase of sulfur dioxide or particulate matter or nitrogen oxides by order or authorized variance from any source.  (Amended effective 06-04-90)

**1.4.4 (e) Control Technology**
    (1) A new source must demonstrate that the control technology to be applied is the best that is available (i.e., BACT as defined herein for each regulated pollutant that it would have the potential to emit in significant amounts).
    (2) A major modification must demonstrate that the control technology to be applied is the best that is available for each regulated pollutant for which it would be a significant net emissions increase at the source.  This requirement applies to each proposed emissions unit at which a net emissions increase in the pollutant would occur as a result of a physical change or change in the method of operation in the unit.
    (3) The determination of best available control technology shall be made on a case by case basis taking into account costs and energy, environmental and economic impacts.
    (4) For phased construction projects the determination of best available control technology shall be reviewed and modified at the discretion of the Commissioner at a reasonable time but no later than 18 months prior to commencement of construction of each independent phase of the project.  At such time the owner or operator may be required to demonstrate the adequacy of any previous determination of best available control technology.

**1.4.4 (f) Air quality impact evaluation**
    (1) Any application for a permit shall contain, as the Commissioner determines appropriate, an evaluation of ambient air quality in the area that the source or modification would affect for each of the following pollutants:

    (A) For a new source, each regulated pollutant that it would have the potential to emit in a significant amount;
    (B) For a major modification, each regulated pollutant for which it would result in a significant net emissions increase.
   (2) For visibility and any pollutant, other than volatile organic compounds, for which an ambient air standard does exist, the evaluation shall contain continuous air quality monitoring data gathered to determine whether emissions of that pollutant would cause or contribute to a violation of the applicable ambient air quality standard.  For any such pollutant for which a standard does not exist, the monitoring data required shall be that which the Commissioner determines is necessary to assess the ambient air quality for that pollutant in that area.  (Amended 7-9-87, effective 8-10-87)
   (3) The evaluation shall demonstrate that, as of the source's start-up date, the increase in emissions from that source, in conjunction with all other applicable emissions increases or reductions of that source, will not cause or contribute to any increase in ambient concentrations exceeding the remaining available PSD increment for the specified air contaminants as determined by the Commissioner.
   (4) The required monitoring data shall have been gathered for a time period of up to one year and shall represent the year preceding submission of the application.  Ambient monitoring data collected for a time period shorter than one year (but no less than four months) or for a time period other than immediately preceding the application may be acceptable if such data are determined by the Commissioner to be within the time period that maximum pollutant concentrations would occur, and to be complete and adequate for determining whether the source or modification will cause or contribute to a violation of any applicable ambient air quality standard or consume more than the remaining available PSD increment.
   (5) For any application which becomes complete except as to the monitoring requirements of 1.4.4(f)(2)-(4), between June 8, 1981 and February 9, 1982, the data that 1.4.4(f)(2) and (3) require shall have been gathered over the period from February 9, 1981 to the date the application becomes otherwise complete, except that:
    (A) If the source or modification would have been major for that pollutant under federal 40 CFR 52.21 as in effect on June 19, 1978, any monitoring data shall have been gathered over the period required by those regulations.
    (B) If the Commissioner determines that a complete and adequate analysis can be accomplished with monitoring data over a shorter period, not to be less than four months, the data that 1.4.4(f)(2) and (3) require shall have been gathered over that shorter period.
    (C) If the monitoring data would relate exclusively to ozone and would not have been required under federal 40 CFR 52.21 as in effect on June 19, 1978, the Commissioner may waive the otherwise applicable requirements of this subsection 1.4.4(f)(5) to the extent that the applicant shows that the monitoring data would be unrepresentative of air quality over a full year.
   (6) The application for a source or modification of volatile organic compounds which satisfies all conditions of 1.4.5(e) may provide post-approval monitoring data for ozone in lieu of providing preconstruction data as required under 1.4.4(f).
   (7) Post-construction monitoring.  The applicant for a permit for a new source or modification shall conduct, after construction, such ambient monitoring and visibility monitoring as the Commissioner determines necessary to determine the effect its emissions may have, or are having, on air quality in any area.  (Amended 7-9-87, effective 8-10-87)
   (8) The operation of monitoring stations for any air quality monitoring required under Section 1.4.4 shall meet the requirements of 40 CFR 58 Appendix B.
   (9) Air quality models.
    (A) Any air quality dispersion modeling that is required under

Section 1.4.4 for estimates of ambient concentrations shall be based on the applicable air quality models, data bases and other requirements specified in the Guidelines on Air Quality Models, OAQPS 1.2-080, U.S. Environmental Protection Agency, April, 1978 and subsequent revisions.

   (B) Where an air quality impact model specified in the Guidelines on Air Quality Models is inappropriate, the model may be modified or another model substituted, as approved by the Commissioner.  Methods like those outlined in the Workbook for the Comparison of Air Quality Models, U.S. Environmental Protection Agency, April, 1977 and subsequent revisions, can be used to determine the comparability of air quality models.

 (10) Upon request of the Commissioner the permit application shall provide information on the nature and extent of any or all general commercial, residential, industrial and other growth which has occurred since August 7, 1977 in the area the source or modification would affect.  The permit application shall also contain an analysis of the air quality impact projected for the area as a result of general commercial, residential and other growth associated with the source or modification.

 (11) The permit application shall provide an analysis of the impairment to visibility, soils and vegetation as a result of the source or modification.  The Commissioner may require monitoring of visibility in any Federal Class I area near the proposed new stationary source or major modification for such purposes and by such means as the Commissioner deems necessary and appropriate.  (Amended 7-9-87, effective 8-10-87)

### 1.4.4  (g)  Source Impacting Class I areas

 (1) Permits may be issued at variance to the limitations imposed on a Class I area in compliance with the procedures and limitations established in State and Federal Clean Air Acts.

 (2) The permit application for a proposed new source or modification will contain an analysis on the impairment of visibility and an assessment of any anticipated adverse impacts on soils and vegetation in the vicinity of the source resulting from construction of the source.  The Commissioner shall notify the appropriate Federal Land Manager of the receipt of any such analysis and include a complete copy of the permit application.  Any analysis performed by the Land Manager shall be considered by the Commissioner provided that the analysis is filed with the Air Quality Service within 30 days of receipt of the application by the Land Manager.  Where the Commissioner finds that such an analysis does not demonstrate to the satisfaction of the Commissioner that an adverse impact on visibility will result in the Federal Class I area, the  Commissioner will, in any notice of public hearing on the permit application, either explain his decision or give notice as to where the explanation can be obtained.  Further, upon presentation of good and sufficient information, by a federal land manager, the Commissioner may deny the issuance of a permit for a source, emissions from which will adversely impact areas heretofore or hereafter categorized as Class I areas even though the emissions would not cause the increment for such Class I areas to be exceeded.  (Amended 7-9-87, effective 8-10-87)

  (3) Definitions

   (A) Adverse impact on visibility means visibility impairment which interferes with the management, protection, preservation or enjoyment of the visitor's visual experience of the Federal Class I area.  This determination must be made by the Air Quality Service on a case-by-case basis taking into account the geographic extent, intensity, duration, frequency and time of visibility impairments, and how these factors correlate with (1) times of visitor use of the Federal Class I area, and (2) the frequency and timing of natural conditions that reduce visibility.

   (B) Natural conditions mean naturally occurring phenomena against which any changes in visibility are measured in terms of visual range, contrast or

9/6/13 Oklahoma: OK Regulation 5.1.3 Major Source – Prevention of Significant Deterioration (PSD) Increments For Attainment Areas SIP effective 2000-01-07,

Case 5:13-cv-00690-D Document 10-3 Filed 09/06/13 Page 13 of 13

coloration.
           (C)  Visibility impairment means any humanly perceptible reduction in visibility (visual range, contrast and coloration) from that which would have existed under natural conditions.
           (D)  Federal land manager means the Secretary of the department with authority over the Federal Class I area or his representative.
           (E)  Installation means an identifiable piece of process equipment.
(1.4.4(g)(3) amended 7-9-87, effective 8-10-87)

**1.4.4  (h)  Innovative Control Technology**
    (1)  An applicant for a permit for a proposed major source or modification may request the Commissioner in writing to approve a system of innovative control technology.
    (2)  The Commissioner may determine that the innovative control technology is permissible if:
        (A)  The proposed control system would not cause or contribute to an unreasonable risk to public health, welfare or safety in its operation or function.
        (B)  The applicant agrees to achieve a level of continuous emissions reductions equivalent to that which would have been required for best available control technology under 1.4.4(e) by a date specified by the Commissioner. Such date shall not be later than 4 years from the time of start-up or 7 years from permit issuance.
        (C)  The source or modification would meet the requirements equivalent to those in 1.4.2 and 1.4.4(e) based on the emissions rate that the source employing the system of innovative control technology would be required to meet on the date specified by the Commissioner.
        (D)  The source or modification would not, before the date specified, cause or contribute to any violation of the applicable ambient air standards, or impact any Class I area or area where an applicable increment is known to be violated.
        (E)  All other applicable requirements including those for public review have been met.
    (3)  The Commissioner shall withdraw approval to employ a system of innovative control technology made under section 1.4.4(h), if:
        (A)  The proposed system fails by the specified date to achieve the required continuous reduction rate; or,
        (B)  The proposed system fails before the specified date so as to contribute to an unreasonable risk to public health, welfare or safety; or,
        (C)  The Commissioner decides at any time that the proposed system is unlikely to achieve the required level of control or to protect the public health, welfare or safety.
    (4)  If a source or modification fails to meet the required level of continuous emissions reduction within the specified time period, or if the approval is withdrawn in accordance with 1.4.4(h)(3), the source or modification may be allowed up to an additional 3 years to meet the requirement for application of best available control technology through the use of a demonstrated system of control.

************************* end ok 1.4.4 **********************a33**

This SIP Citation Was Last Modified on: 05/13/2009