# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. CIV-13-690-D |
| OKLAHOMA GAS AND ELECTRIC COMPANY, | Judge Timothy D. DeGiusti |
| *Defendant*. | |

## MOTION AND BRIEF IN SUPPORT OF THE UTILITY AIR REGULATORY GROUP FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*

### MOTION

The Utility Air Regulatory Group ("UARG") respectfully requests leave to submit the attached brief as *amicus curiae* regarding the proper interpretation of the Clean Air Act's ("CAA") New Source Review ("NSR") rules. The proper interpretation of the NSR rules is an issue of national importance, in which UARG has a direct and substantial interest.

This case constitutes the latest in a string of those filed by the United States Environmental Protection Agency ("EPA") in what has been described as "'the largest, most contentious industry-wide enforcement initiative in EPA history' to retroactively target violations of the New Source Review program." *United States v. EME Homer City Generation L.P.*, 727 F.3d 274, 281 (3d Cir. 2013) (quoting Margaret Claiborne

Campbell and Angela Jean Levin, *Ten Years of New Source Review Enforcement Litigation*, 24 Nat. Resources & Env't. 16 (2010)).  In this enforcement initiative, the Government has experimented with new interpretations of the NSR rules that repudiate decades of prior EPA statements and practice regarding the scope of the NSR program. In this, the latest enforcement initiative case, the Government has now altered its litigation position yet again in order to respond to its latest defeat in the initiative: *United States v. DTE Energy*, 711 F.3d 643 (6th Cir. 2013) ("*DTE Energy*").  There, the Sixth Circuit soundly rejected the Government's theory that it can second-guess a source's emissions projections and base liability on such projections rather than actual post-project emissions data.

UARG's members have a direct and substantial interest in (a) the proper application of the NSR rules, and (b) ensuring that any change to the scope of these rules occurs through notice and comment rulemaking, not through enforcement litigation.  A substantial majority of the Nation's electric generating facilities are UARG members. The majority of utilities that have been targeted in the Government's "NSR enforcement initiative" are UARG members.[1]  UARG members therefore have an interest in this litigation, as it represents the latest evolution of the Government's litigation theories in the enforcement initiative.  Moreover, as discussed below, UARG has participated on behalf of its members in *every* NSR rulemaking (and ensuing D.C. Circuit review of those rulemakings) from the very inception of the NSR program in 1977 to the present. UARG has also filed *amicus* briefs in several NSR enforcement actions, including most

---

[1] Oklahoma Gas and Electric Company ("OG&E"), however, is not a member of UARG.

recently the *DTE Energy* case in the Sixth Circuit.  UARG is therefore uniquely qualified

to provide the regulatory history of the NSR program to assist the Court in evaluating the

Government's current claims regarding a utility's obligations under that program.

Defendant OG&E consents to the filing of UARG's amicus brief.   The

Government does not.

## BRIEF IN SUPPORT

UARG is a voluntary, non-profit association of (a) individual electric utilities

located throughout the country, and (b) national industry trade associations.  UARG's

purpose is to participate on behalf of its members collectively in EPA rulemaking and

other Clean Air Act proceedings that affect the interests of electric generators, and in

litigation arising from those proceedings.  The facilities owned and operated by UARG's

members represent a substantial majority of this Nation's electric generating capacity.

UARG's companies own and operate steam electric generating units that produce

electricity for individuals, businesses and government entities.  These units consist of

thousands of separate parts and components operated in an integrated fashion to produce

electricity.  The failure of any of these parts—from the smallest valve to the largest boiler

components—can result in unsafe and unreliable operation.  As a result, the utility

industry routinely repairs and replaces deteriorating and broken components to help

ensure a reliable supply of electricity to the public.

The key question presented in this case relates to the obligations imposed by the

NSR rules on utilities before they commence such projects.  Unlike previous cases in the

NSR enforcement initiative, the Government does not expressly contend that the

maintenance projects in question were "major modifications" under the CAA and NSR regulations. The Government instead attempts to take advantage of a narrow window for enforcement left open by *DTE Energy*, by framing its case as an action to determine "at a basic level" whether the operator conducted a projection in compliance with the "specific instructions" in the regulations governing preconstruction projections. The Government thus seeks a declaration that OG&E failed to perform a preconstruction projection as required by the 1980 NSR rules. *See* Compl. ¶ 51. In particular, the Government contends that OG&E's commitment to ensure that emissions do not exceed baseline levels somehow violated those rules. The Government thus asks that OG&E be made to "properly" perform projections and then submit them to EPA for review and approval, *id.* ¶ 52. The Government seems to contemplate that, if the "new" projections do not conform to its litigation position that all such maintenance projects qualify as "major modifications," EPA could disapprove the new projections and require OG&E to obtain NSR preconstruction permits retroactively.

The Government's revised approach to the NSR enforcement initiative is flawed. First, the Government cannot second-guess the projections actually performed by a source. Instead, the Government is limited to seeking a determination of compliance with the "specific requirements" of the regulations governing preconstruction projections. The enforcement scheme the Government envisions would transform NSR into a "prior approval" scheme that is fundamentally at odds with the system created by the statute and the NSR regulations. Second, it is entirely proper for an operator to commit to voluntarily limit emissions to avoid an increase that might trigger NSR enforcement.

Indeed, EPA expected operators would do so in its rulemakings, and the Sixth Circuit in

*DTE* explicitly upheld that approach.  EPA cannot change any of these rules simply by

re-interpreting them through enforcement litigation.  Rather, the law requires any changes

to take place prospectively, through notice and comment rulemaking.  *See Christensen v.*

*Harris County*, 529 U.S. 576, 588 (2000) ("To defer to the agency's position would be to

permit the agency, under the guise of interpreting a regulation, to create *de facto* a new

regulation.").

　　　　This case thus deals with an issue of national importance, and UARG has a

substantial interest in its proper resolution.

## **ARGUMENT**

　　　　Leave to participate as *amicus curiae* is a matter within the sound discretion of the

district court.   *See Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 2008 WL

1994914, at *1 (N.D. Okla. May 5, 2008) (citing *United States v. Michigan*, 940 F.2d

143, 165 (6th Cir. 1991).

> An amicus brief should normally be allowed when . . . the
> amicus has an interest in some other case that may be affected
> by the decision in the present case (though not enough
> affected to entitle the amicus to intervene and become a party
> in the present case), or when the amicus has unique
> information or perspective that can help the court beyond the
> help that the lawyers for the parties are able to provide.

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).

UARG's motion for leave to file satisfies these conditions.[2]

      1.    <u>UARG's members have an interest in the Government's NSR enforcement initiative in general, and this case in particular.</u>

In this case, the Government attempts to use the recent decision by the Sixth Circuit in *DTE Energy* to fashion a new theory of liability under the NSR rules, under which it can second-guess a utility's emissions projections. The Sixth Circuit decision in fact says no such thing, and expressly rejects the concept of agency second-guessing. One of UARG's members—DTE—is the defendant in that case, with a substantial interest in defending its success in that litigation. UARG's other members share that interest, particularly when each one of them is a potential target of an enforcement action or citizen suit like this one. *Ryan*, 125 F.3d at 1063 (participation "should normally be allowed . . . when the amicus has an interest in some other case that may be affected by the decision in the present case"). Indeed, of eight NSR enforcement cases filed at the beginning of this initiative in 1999-2000, six were filed against UARG members.

UARG also has an interest in ensuring that EPA follow the statutory requirements of notice and comment rulemaking should it desire to amend its regulations. In the text of the regulations and through its statements in the Federal Register and implementation of the NSR program, EPA has established an interpretation of the NSR rules under which sources are not required to submit every project to the agency for prior approval. Ex. 1 (*Amicus* Br.) at 10. In this case, however, the Government seeks to transform the NSR

---

[2] UARG seeks leave to file its *amicus* brief a few days after OG&E's opposition to the Government's motion for summary judgment. UARG has reviewed the parties' briefing on that motion for summary judgment in order to avoid duplication.

program into a "prior approval" scheme in which the utility must submit its projections to the agency for approval and, if the agency requires it, obtain a post-construction NSR permit.  Compl. ¶¶ 51-52.

This litigation position is of particular concern to UARG.  Fundamental principles of administrative law hold that an agency cannot create a *de facto* new regulation in the guise of "interpretation."  *Christensen*, 529 U.S. at 588.  UARG members have been performing projects for decades in reliance on EPA regulations and guidance allowing them to make applicability determinations for themselves.  Only notice and comment rulemaking—rulemaking in which UARG could participate—can change the established interpretation and application of the regulations.

2.      UARG has unique experience that can help this Court.

For over thirty years, UARG has participated on behalf of its members in rulemakings and other Clean Air Act proceedings that affect the interests of electric generators, and in litigation arising from those proceedings.  It has participated in every rulemaking related to the NSR program since 1977, and has represented the utility industry in virtually every judicial review proceeding related to NSR.  For example, UARG was lead industry petitioner and intervenor in the seminal case of *Alabama Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979), in which the D.C. Circuit reviewed the very first set of NSR rules promulgated in the wake of the 1977 CAA Amendments.  UARG then participated in the remand rulemaking, which resulted in the 1980 NSR rules at issue here.  UARG participated as *amicus* in *Wisconsin Elec. Power Co. v. Reilly*, 893 F.2d 901 (7th Cir. 1990) ("*WEPCo*"), which remains one of the most important NSR cases for the

utility industry.   UARG participated in the 1992 rulemaking that followed and largely grew out of that case—resulting in promulgation of the EPA final action known as the "WEPCo Rule."   Finally, UARG was heavily involved in the administrative and judicial proceedings for the latest version of the NSR rules, issued in 2002.  *See New York v. U.S. EPA*, 413 F.3d 3 (D.C. Cir. 2005).   That litigation spanned several years, and involved extensive briefing and participation by UARG.[3]

UARG thus has a unique and deep understanding of how the NSR Rules were developed and originally interpreted by EPA, and a key perspective that is distinct from that offered by OG&E, who is not UARG member.   As a result, UARG respectfully submits it can offer a broader perspective on the issues before the Court, that cannot be provided by the parties alone.  *See, e.g., Ryan,* 125 F.3d at 1063   (participation "should normally be allowed . . . when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide"); *see also Wilson v. Al McCord Inc.*, 611 F. Supp. 621, 622 (W.D. Okla. 1985), *aff'd in part*, *rev'd in part on other grounds,* 858 F.2d 1469 (10th Cir. 1988) (allowing *amicus* to file a brief found to be "helpful in resolving the issues now before the Court").   Indeed, UARG has participated as *amicus* in several NSR enforcement cases, including *WEPCo, supra*; *U.S. v. Cinergy Corp.*, 458 F.3d 705 (7th Cir. 2006); *Envtl. Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007); *Nat'l Parks & Conservation Ass'n v. TVA*, 502 F.3d 1316

---

[3] The *New York* court decided challenges to all three sets of NSR rules promulgated since 1980, as the challenges to the 1980 rules and the 1992 WEPCo Rule had been held in abeyance pending EPA's promised changes to those rules, which ultimately culminated in the 2002 NSR Reform Rules.   As an intervenor, UARG defended the WEPCo Rule provisions and the 2002 NSR Reform Rules.

(11th Cir. 2007); *DTE Energy*, *supra*; *Conservation Law Found., Inc. v. Pub. Serv. Co. of New Hampshire*, Case No. 1:11-cv-353-JL (pending D.N.H.); and *Diné Citizens Against Ruining Our Environment, et al. v. Arizona Pub. Serv. Co.*, No. 1:11-cv-00889-BB-KBM (pending D.N.M.).

This experience makes UARG well-positioned to provide the Court with key pieces of the regulatory history not covered in the Government's briefing.  UARG's *amicus* brief, attached hereto as Exhibit 1, presents a concise history of the 40-year old NSR program and the Government's 15-year old enforcement initiative.  That history includes many examples of agency statements and actions inconsistent with the Government's litigation position in this case.  Because this information will help the Court evaluate the merits of the claims before it, the Court should grant UARG's motion and allow it to file the proposed amicus brief.  *See Wilson*, 611 F. Supp. at 622 (allowing *amicus* to file a brief found to be "helpful in resolving the issues now before the Court").

## CONCLUSION

For the foregoing reasons, the Court should grant UARG's motion and allow it to file its *amicus* brief, attached hereto as Exhibit 1.

Date:  November 4, 2013                  Respectfully Submitted,


                                         By: /s/ *Robert G. McCampbell*
                                              Robert G. McCampbell
                                              Fellers Snider
                                              100 N. Broadway, Suite 1700
                                              Oklahoma City, OK 73102
                                              rmccampbell@fellerssnider.com
                                              (405) 239-7252

                                              F. William Brownell
                                              Makram B. Jaber
                                              Nash E. Long, III
                                              Brent A. Rosser
                                              George P. Sibley, III
                                              Hunton & Williams LLP
                                              2200 Pennsylvania Ave., N.W.
                                              Washington, D.C. 20037
                                              mjaber@hunton.com
                                              (202) 955-1500

                                              *Counsel for Utility Air Regulatory Group*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2013 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Elias L Quinn
US Dept of Justice Civil Div-601-DC
601 D St NW
Washington, DC 20004
Phone:  (202) 514-2756
Fax:     (202) 514-0097
elias.quinn@usdoj.gov

Brian J. Murray
Charles T. Wehland
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Fax:             (312) 782-8585
bjmurray@jonesday.com
ctwehland@jonesday.com

Donald K. Shandy (OBA No. 11511)
Patrick R. Pearce, Jr. (OBA No. 18802)
RYAN WHALEY COLDIRON
 SHANDY PLLC
119 N. Robinson Avenue, Ste 900
Oklahoma City, OK 73102
Telephone:   (405) 239-6040
Fax:             (405) 239-6766
DShandy@ryanwhaley.com
RPearce@ryanwhaley.com

Jacquelyn L. Dill
Dill Law Firm, P.C.
12101 N. MacArthur Blvd. Suite 200
Oklahoma City, Oklahoma 73162
Phone:   (405) 722-9600
Fax:        (405) 694-4568
jdill@dilllawfirm.com

/s/ *Robert G. McCampbell*
Robert G. McCampbell