**UNITED STATES DISCTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

_____  )
                                )
UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
        And                     )
                                )
SIERRA CLUB,                    )
                                )  Civil Action No. 5:13-cv-00690-D
        Plaintiff-Intervenor    )
                                )
        v.                      )
                                )
OKLAHOMA GAS & ELECTRIC         )
COMPANY,                        )
                                )
        Defendant.              )
_____  )

**SIERRA CLUB'S BRIEF IN OPPOSITION TO UTILITY AIR**
**REGULATORY GROUP'S MOTION FOR LEAVE TO FILE BRIEF**
**AS *AMICUS CURIAE***

David C. Bender
McGillivray Westerberg & Bender LLC
211 S. Paterson St., Suite 320
Madison, Wisconsin 53703
P: (608) 310-3560
F: (608) 310-3561

Jacquelyn L. Dill
Dill Law Firm, P.C.
12101 N. MacArthur Blvd.
Suite 200
Oklahoma City, Oklahoma 73162
P: (405) 722-9600
F: (405) 694-4568

Plaintiff-Intervenor Sierra Club, by its undersigned attorneys, hereby responds to the Utility Air Regulatory Group's ("UARG") Motion for Leave to File Brief as Amicus Curiae.  (Dkt. #29.)   For the reasons stated below, UARG's motion should be denied.

## **INTRODUCTION**

UARG purports to be a "voluntary, non-profit association" comprised of "individual electric utilities located throughout the country" and 'national industry trade associations."  (Dkt. #29 at 3.)  It claims that its members—who are regulated utilities just like Defendant Oklahoma Gas and Electric Company ("OG&E") or other industry trade organizations—have an interest in the "proper application of the NSR rules" (Dkt. #29 at 2), but points to no pending case in which its (or its members') actual interests may be affected by the outcome here.  What UARG really seeks is another opportunity to vent its frustration that the coal-fired utility industry has not received wholesale immunity from Clean Air Act requirements as UARG believes it deserves.

UARG's arguments offer nothing new to this case, which has already been subject to substantial briefing by the parties on Plaintiff Environmental Protection Agency's ("EPA") motion for summary judgment (Dkt. #8) and OG&E's motion to dismiss (Dkt. #10).  UARG's proposed amicus brief amounts to nothing more than a biased and ultimately irrelevant discourse on the evolution of the federal New Source Review ("NSR") program under the Clean Air Act, most of which has never been adopted into the state-specific plan approved for Oklahoma.  What UARG's brief lacks in relevance it hopes to make up in ad hominem attacks on the government.  UARG's barbs are misplaced; this is neither the time nor the place for UARG.  The proposed amicus brief is

unhelpful to the case and should be denied. However, if the Court chooses to allow the filing of the amicus brief, it should reject UARG's two short arguments that largely parrot what has already been stated by OG&E, UARG's brother-in-arms, and should instead grant EPA's motion for summary judgment.

## ARGUMENT

**I.     UARG'S MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* SHOULD BE DENIED.**

   A.   UARG's Proposed Amicus Brief Exceeds The Page Limit Applicable To The Parties.

As an initial matter, UARG's brief is too long and it should be rejected for that reason alone. District courts often turn to Federal Rule of Appellate Procedure 29 (which establishes the procedures for filing an amicus brief in the federal Courts of Appeals) for guidance because there is no comparable rule of civil procedure. *Sierra Club v. FEMA*, No. H-07-0608, 2007 U.S. Dist. LEXIS 84230, *3-4 (S.D. Tex. Nov. 14, 2007). Rule 29 limits the length of an amicus brief to "no more than one-half the maximum length authorized . . . for a party's principal brief." Fed. R. App. P. 29(d). This makes sense, since litigation should not be dominated by non-parties. Yet, UARG's 31-page brief far exceeds this guidance from the Rules of Appellate procedure, and even exceeds the page limits applicable to the parties themselves. *See* LCvR 7.1 (limiting party briefs to 30 pages for summary judgment briefs and 25 pages for other briefs, absent leave of the Court to file an oversized brief). UARG has not sought leave to file such a lengthy brief. Its amicus brief should be denied.

B.   UARG's Proposed Brief Does Not Meet The Standard For Granting Leave To File An Amicus Brief.

UARG's proposed amicus brief also fails to meet the standard for granting leave to file such a brief as outlined in the very case relied upon by UARG: *Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1063 (7th Cir. 1997). Because OG&E is adequately represented, UARG's professed interest is no different than OG&E's[1], and because the proposed amicus brief offers no unique perspective to this case, UARG's motion should be denied.

Amicus briefs that merely advocate for one party's position are disfavored. "The term 'amicus curiae' means friend of the court, not friend of a party." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 2008 U.S. Dist. LEXIS 36665, *7-8 (N.D. Okla. May 5, 2008) (quoting *Ryan,* 125 F.3d at 1063). The role of an amicus curiae is "that of an impartial friend of the court—not an adversary party in interest in the litigation." *United States v. Michigan*, 940 F.2d 143, 164-165 (6th Cir. 1991). The amicus should therefore "advise in order that justice may be done, rather than . . . advocate a point of view so that a cause may be won by one party or another." *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982). For these reasons, courts routinely deny amicus briefs by those with interests clearly aligned with parties in the case. *See, e.g., Adams v. United States*, 2011 U.S. Dist. LEXIS 23886, *11 (D. Idaho Mar. 8, 2011); *Ryan*, 125 F.3d at 1063 (amicus

---

[1] UARG neither owns nor operates any pollution sources subject to any Clean Air Act regulations. Rather, it professes an interest only on behalf of its members, who purportedly include large electric generating companies who may be the subject of an enforcement action based on the same legal theories the government advances in this case. (Dkt. #29 at 2.) To the extent this is true, it is no different than OG&E's interest in this case—since OG&E *is* a large electric generation company that is subject to those very legal theories.

briefs that are "filed by allies of litigants and duplicate the arguments made in the litigants' briefs . . . are an abuse.")

Although the decision to permit the filing of an amicus brief is within the sound discretion of the court, "leave to file an amicus curiae brief should be denied" unless:

> [1] a party is not represented competently or is not represented at all; [2] the amicus has an interest in some other case that may be affected by the decision in the present case . . . or [3] the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.

*Tyson Foods*, 2008 U.S. Dist. LEXIS 36665 at *7 (citing *Ryan*, 125 F.3d at 1063). *See also JPMorgan Chase Bank, N.A. v. Fletcher*, 2008 U.S. Dist. LEXIS 1069, *3-4 (N.D. Okla. Jan. 7, 2008) (denying a proposed amicus brief that is not "useful or helpful to the Court beyond the help the lawyers for the parties are able to provide.")

UARG cannot meet any of these criteria, and its proposed amicus brief should be denied. First, OG&E is obviously represented by competent counsel, including at least four senior attorneys from two major law firms, each of whom claim to have extensive litigation experience in the fields of energy and environmental law.[2] This renders UARG's proposed amicus brief unnecessary. *See Elm Grove v. Py*, 724 F. Supp. 612 (E.D. Wis. 1989) (denying motion for leave to file an amicus brief in part because "[i]t appears both parties are competently represented."). UARG has offered no evidence of its own that OG&E is poorly represented, and thus fails to meet the first factor. *Halo*

---

[2] *See* Ryan Whaley Coldiron Shandy, "Attorneys", at http://www.ryanwhaley.com/attorneys/; Jones Day, "People", at http://www.jonesday.com/_lawyers/Search.aspx (last visited December 6, 2013).

*Wireless, Inc. v. Alenco Communs. Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) (rejecting proposed amicus brief where "there is no evidence that any of the Appellees are poorly represented[.]")

Second, UARG does not point to any interest "in some other case" that might be affected by the outcome here. Instead, it points only to a litany of past cases in which it (or its members) has litigated similar issues against the EPA, and claims "an interest in the Government's NSR enforcement initiative in general" as well as a vague wish "that EPA follow statutory requirements of notice and comment rulemaking should it desire to amend its regulations." (Dkt. #29 at 6-7) (emphasis added). As to UARG's first point, a mere generalized interest in the subject matter of this case is not enough. *See Tyson Foods*, 2008 U.S. Dist. LEXIS 36665 at *8 (denying amicus participation where "the proposed amici indicate their interest about this case, but do not contend they presently have interests in other pending cases that may be affected by the decision here.") (emphasis added). Although UARG might have met this standard if it had identified a pending enforcement suit by the United States against one of its member utilities based on a similar theory of liability, it has failed to do so.[3] And as to UARG's second purported interest—that EPA adhere to "notice and comment rulemaking"—that simply is not at issue in this case. There is no dispute that EPA adopted the Oklahoma

---

[3] This factor would be difficult for UARG to meet. As explained in Sierra Club's prior briefing in this case, Oklahoma has its own implementation plan setting forth the applicable regulations in this case. *See* Dkt. # 30 at 3-10. That implementation plan differs in important respects from the federal regulations relied on by OG&E and UARG. *Id.* To meet the second standard for a motion to file amicus, UARG would need to demonstrate that its members are litigating another case under the Oklahoma implementation plan, not under another state's implementation plan or the federal implementation plan inapplicable in this case.

implementation plan at issue. 48 Fed. Reg. 38,635 (August 25, 1983). OG&E has not suggested that requisite rulemaking procedures were not followed by EPA. *See generally* Dkt. ##10-1 and 27. And for good reason: such a claim in this case would be too late and to the wrong court. 42 U.S.C. § 7607(b) (review of rulemaking can be reviewed within 60 days in the court of appeals but not in enforcement actions).

Finally, UARG does not possess a unique perspective or offer unique information beyond that offered by OG&E, primarily because UARG is essentially aligned with OG&E. UARG is comprised of regulated electric utilities, just like OG&E, making it a friend of OG&E, not a friend of the Court. *Ryan,* 125 F.3d at 1063. UARG's experience participating in NSR rulemakings and judicial review proceedings is immaterial; they do not demonstrate a "deep understanding of how the NSR Rules were developed and originally interpreted by EPA" as it suggests, Dkt. #29 at 8, but rather a longstanding advocacy position that furthers the interests of its utility members shared by OG&E.

In any event, the information offered by UARG is not in any way "unique." To the extent UARG makes an argument about the issues in this case[4], UARG merely parrots arguments already made by OG&E's briefing:

- That the 2002 and 2007 federal NSR rules create a "project-and-report" system, not a "prior approval" system, relying heavily (and mistakenly) on *United States v. DTE Energy Co.*, 711 F.3d 643 (6th Cir. 2013). *Compare* Dkt. #10-1 at 15-18 and Dkt. #27 at 12-16 (OG&E) with Dkt. #29-1 at 21-26 (UARG).

---

[4] UARG's proposed amicus brief actually includes more than 23 pages of "introduction" and "legal background" that amounts to a cut-and-paste attack on EPA's enforcement activity in general, followed by a seven-page "argument" section based on federal regulations that do not even apply, rather than the state regulation that controls in this case. *See* Dkt. #29-1.

- OG&E pre-project future emissions projections coupled with a voluntary agreement to artificially cap post-project emissions (which, according to OG&E and UARG, show no net emissions increase resulting from the projects at issue) are sufficient to confirm that PSD is not applicable to the projects. *Compare* Dkt. #27 at 19-25 (OG&E) with Dkt. #29-1 at 28-30 (UARG).

Because UARG's proffered amicus brief merely "duplicate[s] the arguments made in the litigants' briefs" the proposed amicus brief is "an abuse" and should be excluded. *Ryan*, 125 F.3d at 1063.

UARG's motion for leave to file its proposed amicus brief should be denied because OG&E is adequately represented by counsel, and because UARG demonstrates neither an interest in an actual case that may be affected nor a unique perspective that differs from that already provided by OG&E.

**II.   UARG'S SUBSTANTIVE ARGUMENTS MISS THE MARK BECAUSE THEY ARE BASED ON FEDERAL NSR RULES, BUT THE OKLAHOMA SIP ACTUALLY PROVIDES THE SUBSTANTIVE LAW IN THIS CASE.**

Even if the Court, in its discretion, were to accept UARG's duplicative brief, the substantive arguments presented therein are incorrect and should be rejected. As mentioned above, UARG's brief essentially posits two arguments in opposition to EPA's motion for summary judgment: First, that EPA's federal rules create a "project and report" system that effectively bars EPA enforcement after the fact; and second, that OG&E's voluntary, temporary emissions reductions are sufficient to allow OG&E to avoid PSD requirements. Both arguments are flawed as a matter of law.

A. The "Project-and-Report System" Created By The 1992, 2002, and 2007 Federal NSR Rules and Discussed in *DTE Energy* Is Not Found In The Oklahoma SIP That Governs This Case.

For its first argument, UARG relies extensively upon the Sixth Circuit's recent decision in *United States v. DTE Energy Co.*, 711 F.3d 643 (6th Cir. 2013)—which, in turn, discusses federal regulations promulgated in 1992 and revised in 2002 and 2007—for the proposition that OG&E satisfied Clean Air Act requirements by projecting its future (i.e., post-construction) emissions and then monitoring its actual emissions over time. (*See* Dkt. #29-1 at 25-28). Whatever relevance such arguments might have in states where the 1992, 2002 and 2007 rules have been adopted—like Michigan in the *DTE* Energy case—they have no relevance in this case because those rules do not apply in Oklahoma. (*See* Dkt. #30 at 9-10.) UARG's discussion of *DTE Energy* and the federal NSR regulations promulgated in 1992 and after lacks candor. It fails to advise the Court that the Oklahoma regulations controlling this case never adopted the 1992 and later federal regulations that UARG relies upon.[5]

UARG's arguments are irrelevant to this case and its brief should not be accepted.

---

[5] UARG does cite the 1980 federal regulations that the controlling Oklahoma implementation plan mirrors, but only to note that the 1980 regulations do not require pre-construction notification or submission of projected emissions. (Dkt. #29-1 at 26-27). However, UARG conveniently ignores the reason for that difference: that the 1980 regulation and Oklahoma implementation plan never contained the projected future emission scheme later added in the 1992 and 2002 federal rules. OG&E made the same mistake in its brief in support of its motion to dismiss, but unlike UARG, it was at least forthright enough to admit that the later federal NSR Rules are "not part of the federally-approved SIP for Oklahoma[.]" Dkt. #27 at 17 (referring to the 1992 "WEPCO" Rule, relevant parts codified at 40 C.F.R. § 52.166(b)(21)(v)

B.  <u>OG&E Cannot Evade PSD By Voluntarily And Temporarily Limiting Its Emissions</u>.

UARG's second argument (again, replowing the same ground already covered by OG&E's briefing) is that OG&E's "commitment" to temporarily restrict post-construction emissions below the significance threshold shields it from liability. (Dkt. #29-1 at 28-30.) This argument was flawed when OG&E made it and remains flawed when UARG repeats it.

First, explained in prior briefing in this case, the federal PSD regulations (assuming, *arguendo* that they even apply in Oklahoma) do not provide an avenue for a polluter to voluntarily and temporarily limit the source's post-project emissions in order to avoid PSD applicability. Instead, the operator must either (a) prepare a post-project emissions projection that reflects its real-world, "regular operation after the project," or (b) obtain a "synthetic minor" permit that contains binding and enforceable emissions limitations on the sources' post-project emissions. (*See* Dkt. #8 at 21; Dkt. #30 at 15). Without one of these compliance mechanisms in place, OG&E's mere "proposal" to cap its emissions does not comply with the law.

UARG next contends that EPA's argument that voluntary post-project emissions suppression is a "roadmap for evasion" is contrary to statements the agency made during the 2002 NSR rulemaking process, in which EPA (according to UARG's telling) created a "strong incentive" for sources to voluntarily limit their actual emissions to their pre-project projections or else "face NSR." (Dkt. #29-1 at 29.) In support, UARG cites a single quote from a 2002 environmental analysis document, but not the 2002 rule itself.

(*Id.*)  UARG's reliance on this 2002 agency statement is, once again, misplaced.  To the extent EPA created any incentive, as the language quoted by UARG clearly states, it was for operators "<u>projecting</u> no significant actual increase" to "stay within that <u>projection</u> or face NSR."  (Dkt. #29-1 at 29) (quoting *EPA, Supplemental Analysis of the Environmental Impact of the 2002 Final NSR Improvement Rules* at 14 (Nov. 21, 2002) (emphasis added)).  In other words, that incentive is dependent in the first instance upon an accurate projection of post-project emissions (which are based on normal, unrestricted, operation), not a non-binding proposal to temporarily cap emissions.  Here, OG&E made no such projection based on normal, unrestricted operation but only (at most) on temporarily restricted operation.

   Finally, UARG contends that the Sixth Circuit's *DTE Energy* decision rejected EPA's argument in this case.  (Dkt. #29-1 at 30) (citing 711 F.3d at 650-51).  UARG believes the Sixth Circuit found the operator's efforts to voluntarily limit post-project emissions to be "entirely consistent with the statute and regulations." (*Id.*)  On this point, the Sixth Circuit's statements are not only dicta, but they do not comport with the court's holding regarding the extent of EPA's enforcement authority.  *See* 711 F.3d at 651-52 (stating that "EPA can bring an enforcement action whenever emissions increase, so long as the increase is traceable to the construction.").  Because a polluter who voluntarily limits its emissions for only five years can then pollute more (and perhaps do so

undetected and after the statute of limitations passes[6]), such a scheme undercuts instead of advancing the Clean Air Act's goals.

OG&E could have opted for one of the lawful mechanisms to avoid PSD requirements. It failed to do so and relied on a legal theory inconsistent with the Oklahoma implementation plan and even with the federal regulations OG&E cites. The price of that error is the very enforcement action it is now subject to. *See Sierra Club v. OG&E*, 6:13-cv-356-JHP (E.D.Okla.). There has never been, nor should there ever be, immunity from Clean Air Act violations. UARG's arguments notwithstanding. UARG's brief should be denied or the arguments therein rejected.

## **CONCLUSION**

For the foregoing reasons, UARG's Motion for Leave to File Brief as Amicus Curiae should be denied. However, if the Court chooses to allow the brief, it should reject UARG's arguments and grant EPA's motion for summary judgment.

---

[6] If OG&E and UARG had their way, the temporary emission constraints proposed by OG&E would be relaxed exactly when EPA's enforcement window closes: after five years. *See* Dkt. #10-1 at 18-25 (arguing that EPA's claims are barred by the five-year statute of limitations in 28 U.S.C. § 2462). While EPA argues convincingly why the statute of limitations does not apply to its claims here, *see* Dkt. #31 at 16-25, OG&E's plan nonetheless appears to be as simple as it is predictable: voluntarily suppress post-project emissions for five years until the statute of limitations expires, then become free to increase emissions without having to install the pollution controls otherwise required by law.

Respectfully submitted this 9th day of December, 2013.

        For Plaintiff-Intervenor Sierra Club:

        s/ David C. Bender
        David C. Bender
        McGillivray Westerberg & Bender LLC
        211 S. Paterson St., Suite 320
        Madison, Wisconsin 53703
        P: (608) 310-3560
        F: (608) 310-3561

        Jacquelyn L. Dill
        Dill Law Firm, P.C.
        12101 N. MacArthur Blvd.
        Suite 200
        Oklahoma City, Oklahoma 73162
        P: (405) 722-9600
        F: (405) 694-4568

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2013, I electronically transmitted the foregoing Brief in Opposition to Utility Air Regulatory Group's Motion for Leave to File Brief as Amicus Curiae with the Clerk of Court using the ECF System. Based on records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Brian J. Murray
Jones Day

Charles T. Wehland
Jones Day

Donald K. Shandy
Ryan Whaley Coldiron Shandy PC

Patrick R. Pearce, Jr.
Ryan Whaley Coldiron Shandy PC

Elias L. Quinn
U.S. Department of Justice

Jacquelyn L. Dill
Dill Law Firm PC

                                                                s/ David C. Bender